IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| CITIZENS FOR RESPONSIBLE GOVERNMENT ADVOCATES, INC.<br><br>    Plaintiff,<br>v.<br><br>THOMAS BARLAND, in his official capacity;<br>HAROLD FROEHLICH, in his official capacity;<br>JOHN FRANKE, in his official capacity;<br>ELSA LAMELAS, in her official capacity;<br>GERALD NICHOL, in his official capacity;<br>TIMOTHY VOCKE, in his official capacity;<br>KEVIN J. KENNEDY, in his official capacity; and<br>JOHN CHISHOLM, in his official capacity;<br><br>    Defendants. | Civil Case No. 2:14-cv-1222<br><br><br><br><u>COMPLAINT</u> |

The plaintiff, Citizens for Responsible Government Advocates, Inc. ("CRG"), alleges as follows:

### NATURE OF THE ACTION

1. This is an action seeking declaratory and injunctive relief from the enforcement of Wisconsin law in violation of CRG's federal rights. According to the Wisconsin Government Accountability Board ("GAB"), Wisconsin law regulates as "contributions" communication expenditures coordinated with a state politician or candidate for state office whether or not the expenditures qualify as express advocacy or its functional equivalent. As a result, organizations like CRG that engage in issue advocacy cannot communicate with candidates or officeholders on matters of public policy without risking criminal prosecution. GAB's position conflicts with the

First Amendment precedents of federal and Wisconsin courts, including a Seventh Circuit decision issued four months ago. *See Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 833 (7th Cir. 2014) (*Barland II*). CRG therefore seeks a declaration that Wisconsin's campaign-finance law, as interpreted by GAB, violates the First and Fourteenth Amendments to the U.S. Constitution and seeks preliminary and permanent injunctions forbidding Defendants from enforcing the relevant provisions of that law.

## JURISDICTION AND VENUE

2. This action arises under the First and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the doctrine recognized in *Ex Parte Young*, 209 U.S. 123 (1908). Jurisdiction of the Court is conferred by 28 U.S.C. § 1331 because CRG's claims arise under the United States Constitution.

3. The United States District Court for the Eastern District of Wisconsin is a proper federal venue for this action under 28 U.S.C. § 1391(b)(1) because all the defendants are residents of Wisconsin and Defendant John Chisholm resides in the Eastern District of Wisconsin.

## PARTIES

4. CRG is a social-welfare organization recognized as a non-profit entity under 26 U.S.C. § 501(c)(4). Its offices are located in Milwaukee County, Wisconsin. CRG was founded in 2006 to advocate for fiscally responsible policy and legislation on a local and statewide basis and to empower citizens to become engaged in managing government. Over the years, it has engaged in advocacy campaigns to promote quality improvement and cost reduction in local government, fiscal responsibility at all levels of state government, government transparency and public accountability, election integrity, and other issues.

5. Seven of the defendants—Thomas Barland, Harold Froehlich, John Franke, Elsa Lamelas, Timothy Vocke, Gerald Nichol, and Kevin J. Kennedy—are board members or officers of GAB, which has authority over administration of Chapter 11 of the Wisconsin Statutes, which is at issue in this action. These defendants are named in their official capacity.

6. Defendant John Chisholm is the district attorney of Milwaukee County and has independent authority to enforce Chapter 11 over citizens of Milwaukee County, including CRG. He is named in his official capacity.

## STATEMENT OF FACTS

### A. CRG's Activities

7. CRG advocates in favor of fiscal conservatism and private property rights. CRG's communications with its supporters and the public consist of speech on issues of public concern in Wisconsin. These communications are "issue advocacy": they convey CRG's positions on the issues without expressly advocating the election or defeat of any candidate or engaging in the functional equivalent of such express advocacy. CRG has regularly engaged in this kind of issue advocacy since 2006 and intends to continue to do so into the future.

8. CRG's issue advocacy takes several forms. CRG creates broadcast advertisements on the issues. CRG also hosts educational events, such as a recent rally in Waukesha called "Yes, we did build it!" featuring speakers from various backgrounds who gave presentations on economic policy. CRG has hosted political candidates and officeholders at its educational events, including Wisconsin Governor Scott Walker, Lieutenant Governor Rebecca Kleefisch, and U.S. Senator Ron Johnson. CRG maintains a website that it uses to communicate its positions on the issues to its supporters and the public.

9. CRG's activities are funded through contributions by supporters of its advocacy. CRG accepts corporate contributions. CRG relies heavily on its supporters to fund its activities, and the extent to which it can engage in its activities depends directly on its supporters' willingness to contribute funds to it. If CRG's fundraising among its supporters were impaired, its ability to function effectively—including its ability to engage in speech on the issues—would be severely compromised.

10. CRG does not make direct or in-kind contributions to candidates for office and does not coordinate any political expenditures with officeholders or candidates for office.

11. CRG is not a "committee" as the term is defined in Wisconsin Statutes § 11.01(4) and is not subject to the filing and disclosure requirements of Wisconsin Statutes § 11.05.

**B.  CRG's Intended Collaboration with Citizen-Candidates**

12. This suit involves CRG's intended collaboration with citizens who have decided to participate directly in Wisconsin politics to advance fiscal responsibility and government accountability. Those citizens include three current candidates for office in Wisconsin: Kim Simac, Carl Pettis, and Jason Arnold.

13. Kim Simac resides in Vilas County, where she is a member of the Board of Supervisors, an elected position. Simac is up for reelection in 2014 and, in 2011, was the Republican challenger against Democratic Wisconsin state Senator Jim Holperin. A committed fiscal conservative, Simac became involved in politics in 2009 to confront the problems facing Wisconsin and the nation.

14. Carl Pettis resides in Waukesha County, where he is a member of the Board of Supervisors, an elected position. Pettis is up for reelection in 2014. A lifelong resident of Waukesha County, Air Force veteran, and former small-business owner, Pettis has been an

4

Case 2:14-cv-01222-RTR   Filed 10/02/14   Page 4 of 19   Document 1

advocate for conservative principles in Wisconsin, including limited government and fiscal responsibility, for decades.

15. Jason "Red" Arnold is a resident of Milwaukee County and a 2014 candidate for the Wisconsin Senate. An Information Technology consultant, Arnold became involved in politics to promote fiscally conservative policies.

16. CRG has long advocated in favor of participatory democracy, encouraging citizens to hold government accountable, particularly on fiscal issues, and to take back the reins of power from the political class and professional politicians. CRG believes that government works better, and is more accountable to the people, when ordinary citizens participate directly in government, such as by running for office, forcing elected officials to justify their policy choices, and injecting common sense into political debates.

17. To that end, CRG intends to create and publish a website, "Take Charge Wisconsin," featuring the stories of citizens who have served in office or are running for office to promote common-sense conservative fiscal policies. Take Charge Wisconsin will advocate for conservative fiscal policies such as efficient government and waste reduction, will highlight examples of government inefficiencies and waste and identify the politicians responsible for them, and will educate citizens on how to promote conservative fiscal policies through participation in politics.

18. Collaboration with Simac, Pettis, and Arnold, as well as other fiscally conservative elected officials and candidates, is central to the creation and ultimately the effectiveness of the Take Charge Wisconsin website. CRG intends to jointly develop with Simac, Pettis, and Arnold materials documenting how political incentives frustrate the achievement of conservative fiscal policy and describing how they have entered into politics to change the terms

5

of the debate and bring these issues to the fore. These materials, including videos, will highlight specific examples of waste and inefficiency and name names—that is, they will call out the politicians who bear responsibility for wasteful government policies. They will also educate concerned citizens how they can be part of the solution. The overall purposes of these materials are to (1) convince citizens that there is a serious problem; (2) encourage citizens to contact the politicians who are responsible for aspects of that problem to express their concerns; (3) demonstrate through the examples of Simac, Pettis, and Arnold that conscientious citizens can make a difference in Wisconsin governance; and (4) educate citizens on further actions that they can take. CRG is aware of no better way to accomplish these things other than by collaborating with citizen-candidates like Simac, Pettis, and Arnold who have direct experience in these matters and can serve as examples for other concerned citizens.

19. CRG may also undertake broadcast advertising, in collaboration with Simac, Pettis, and Arnold, to promote the Take Charge Wisconsin website. These advertisements would identify examples of government waste and inefficiencies and the politicians who bear responsibility for them and would encourage citizens to take action by contacting those politicians and visiting the Take Charge Wisconsin website to learn how they can become more engaged. CRG anticipates that these advertisements may be narrated by, or otherwise feature, Simac, Pettis, and Arnold.

20. CRG hopes that Take Charge Wisconsin will have an immediate impact in Wisconsin policy debates, including in the current election cycle, by educating citizens on the issues and encouraging them to participate in Wisconsin politics. CRG also views Take Charge Wisconsin as a long-term project to drive greater citizen participation in Wisconsin politics. CRG intends to launch the website as soon as possible and to maintain it for at least several years

into the future. It intends to collaborate with additional fiscally conservative elected officials and candidates in the future to create more content for the website and increase its relevance and effectiveness.

21. CRG has registered the Internet domain name takechargewisconsin.org and intends to host the Take Charge Wisconsin website at that address. CRG has already begun planning for some of the website's content. CRG has not been able to begin creating content, however, due to its fear that its intended collaboration with Simac, Pettis, and Arnold may subject it to criminal sanctions under Wisconsin law. CRG believes, based on its principals' experience maintaining other websites, including crgnetwork.com, that it could prepare initial content for Take Charge Wisconsin and launch the website in approximately one week, with broadcast advertising to follow immediately thereafter.

C. **Wisconsin's Campaign-Finance Framework**

22. Chapter 11 of Wisconsin Statutes sets forth the state's campaign-finance regime, which includes a system of contribution limitations, bans on certain contributions, and reporting requirements. Campaign committees are prohibited from receiving contributions in excess of statutory limitations and from receiving contributions from corporations. Wis. Stat. §§ 11.06(1), 11.26, 11.38. Both campaign committees and independent political committees are subject to registration and reporting requirements for contributions received. *E.g.*, Wis. Stat. § 11.05. Organizations that are not campaign committees or political committees are generally not subject to regulation under Chapter 11.

23. Chapter 11 deems certain activities involving independent committees and campaign committees to be campaign "contributions," even if those activities do not involve the conveyance of money or property from the independent committee to the campaign committee.

7

For example, Wisconsin Statutes § 11.10(4) provides that "[a]ny committee which is organized or acts with the cooperation of or upon consultation with a candidate or agent or authorized committee of a candidate, or which acts in concert with or at the request or suggestion of a candidate or agent or authorized committee of a candidate is deemed a subcommittee of the candidate's personal campaign committee." Wisconsin Statutes § 11.06(4)(d) provides that a "contribution, disbursement or obligation made or incurred to or for the benefit of a candidate is reportable by the candidate or the candidate's personal committee if it is made or incurred with the authorizations, direction or control of or otherwise by prearrangement with the candidate or the candidate's agent." GAB has taken the position that expenditures coordinated with a political candidate constitute "contributions," as defined in Wisconsin Statutes § 11.01(6), and are therefore subject to Chapter 11's restrictions on contributions. Ex. A, El. Bd. 00-02 (reaffirmed 3/26/08). *See also* Wis. Stat. §§ 11.26 (contribution caps for contributions to candidates for various state offices), 11.24 (banning contributions "other than from the funds or property belonging to the contributor"), 11.38 (banning contributions by corporations), 11.30 (prohibition on anonymous contributions), 11.05 (reporting requirements for contributions), 11.32 (prohibition on anonymous advertisements), 11.06 (contents of reports filed under Section 11.05), 11.12 (ban on contributions that are not reported), 11.14 (deposit account requirements for contributions), 11.16 (requirements for campaigns in receiving contributions), 11.23 (limitations on contributions concerning a referendum), 11.27 (prohibition on false reports, such as those failing to report contributions), 11.36 (prohibiting solicitation of contributions on certain public property), 11.60 (civil penalties for violations of these provisions), 11.61 (criminal penalties for violations of these provisions), 11.66 (citizen suit for enforcement of these

8

provisions). This approach is intended to prevent circumvention of contribution bans and caps by treating "coordinated" spending as a contribution or campaign expenditure.[1]

24. All the key terms in these provisions—"committee," "disbursement," "contribution," and "obligation"—depend on the phrase "for political purposes" as the term is defined in Wisconsin Statutes § 11.01(16). A "contribution" is a "gift, subscription, loan, advance, or deposit of money or anything of value…made *for political purposes*." Wis. Stat. § 11.01(6)(a)(1) (emphasis added). An "incurred obligation" is "every express obligation…including every loan, guarantee of a loan or other obligation or payment for any goods, or for any services…incurred by a candidate, committee, individual or group *for political purposes*." Wis. Stat. § 11.01(11) (emphasis added). A "disbursement" is a "purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value…[or a 'contract, promise, or agreement' to do any of these things] made *for political purposes*." Wis. Stat. § 11.01(7)(a) (emphasis added).

25. Chapter 11 defines "[a]cts which are for 'political purposes'" to mean those "done for the purpose of influencing the election or nomination for election of any individual to state or local office, for the purpose of influencing the recall from or retention in office of an individual holding a state or local office…." Wis. Stat. § 11.01(16)(a).

26. To avoid striking down the relevant provisions of Wisconsin's campaign-finance law as unconstitutionally vague and overbroad, the Seventh Circuit adopted a limiting construction of the term "political purposes" to reach only "express advocacy and its functional equivalent." *Barland II*, 751 F.3d at 832–39. Under Supreme Court precedent and GAB

---

[1] GAB has taken the position that coordination between a candidate and an organization not registered as a political committee renders the organization a committee subject to regulation under Chapter 11. El. Bd. 00-02 (reaffirmed 3/26/08).

9

administrative regulations, a communication is "express advocacy" if it uses language such as "vote for," "support," or similar language explicitly urging the viewer to cast a vote for or against a specific candidate in an election. A communication is the "functional equivalent" of express advocacy if it is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate. *See FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 457, 469–70 (2007) (Roberts, J.) (*WRTL*). In contrast, communications that focus on policy issues and urge the public to take a stance on such issues are not express advocacy, even if they feature a political candidate and ask the public to contact the candidate regarding the issue. Such communications are known as "issue advocacy." *WRTL*, 551 U.S. at 470.

27. Only one reported decision has considered whether Wisconsin law's "for political purposes" term includes issue advocacy that is coordinated with a political candidate. In *Wisconsin Coalition for Voter Participation, Inc. v. State Elections Board*, 605 N.W.2d 654, 659 (1999) (*WCVP*), the Wisconsin Court of Appeals held, with respect to coordinated communication expenditures, that "the term 'political purposes' is not restricted by the cases, the statutes or the code to acts of express advocacy." According to the Wisconsin Court of Appeals, Chapter 11 regulates issue advocacy if it is done with the subjective intent, or the effect, of influencing an election. *See id*. at 684 & n.9, 685 & n.10.

28. Violations of Chapter 11, including those that GAB contends apply to issue advocacy coordinated with a political candidate, are enforceable through civil and criminal penalties. Wis. Stat. §§ 11.60, 11.61.

D. **GAB Has Adopted and Enforced an Interpretation of Wisconsin Law Restricting Issue Advocacy if It Is Coordinated with a Candidate**

10

29. GAB and Chisholm maintain that the term "for political purposes" reaches issue advocacy if it is made or incurred under the authorization, direction or control of or otherwise by prearrangement with a candidate or a candidate's agent.

30. On June 20, 2013, GAB formally authorized a statewide campaign-finance investigation predicated on the interpretation of Wisconsin law that issue advocacy is subject to regulation when coordinated with a political candidate: "Any individual or organization, including a corporation, may make an independent disbursement or purchase an issue ad. Coordination with a candidate or candidate committee transforms such purportedly independent disbursements and even true 'issue ads' into in-kind or monetary contributions to a candidate." GAB's resolution stated that such coordination may violate the contribution limits and bans, as well as the reporting requirements, of Wisconsin law.

31. GAB filed an *amicus* brief in *O'Keefe v. Chisholm*, No. 14-1822 (7th Cir. filed Aug. 27, 2014), advancing the view that "purported independent groups have no absolute First Amendment right to engage in 'coordinated issue advocacy' with a candidate, because in doing so such groups have made contributions to the candidate, making them no longer 'independent.'" Ex. B, GAB Amicus Br. at 4.

32. Mr. Francis Schmitz, who currently serves as a special investigator for the GAB in its statewide investigation and serves as a special prosecutor nominated by Defendant Chisholm in the investigation, has filed papers in federal and state courts advancing the position that issue advocacy on the part of a social-welfare organization may constitute a contribution to a candidate committee, and render that social-welfare organization a subcommittee of a candidate committee, if the social-welfare organization runs issue advocacy that is subjectively intended to

11

influence, or has the effect of influencing, an election and that issue advocacy is coordinated with a candidate or agent of a candidate. *E.g.*, Ex. C, State's Response to Motion to Quash.

33. GAB's Executive Director, Defendant Kennedy, has offered a sworn statement to the Wisconsin Court of Appeals that "a candidate's coordination with issue advocacy groups…is subject to campaign finance regulation because the coordination results in a political contribution." Ex. D, Kevin Kennedy Aff. ¶ 9. Defendant Kennedy has publicly stated that this interpretation is compelled by Wisconsin law.

34. Defendant Chisholm has also advanced the position that the definition "for political purposes" includes issue advocacy coordinated with a political candidate and has worked in concert with GAB in conducting its statewide issue-advocacy-coordination investigation. Chisholm's office formally commenced an investigation in August 2012 into an alleged issue-advocacy coordination scheme. Chisholm has also advanced this position in federal-court filings.

### E. The Chilling Effect of GAB's Coordinated-Issue-Advocacy Theory

35. In GAB's view, coordination of issue advocacy with a political candidate may result in various violations of Chapter 11, resulting in a concrete threat of civil or criminal enforcement against a person who collaborates with a candidate or office-holder concerning issue advocacy.

36. First, in GAB's view, under Wisconsin Statutes § 11.10(4) an entity that coordinates with a candidate or his official campaign committee becomes a subcommittee of that campaign committee by operation of law. Under GAB's position, an issue-advocacy group that communicates with a candidate or officeholder risks becoming subject to all the regulations in

12

force against an official campaign committee. Under those regulations, the organization would be barred from:

- Making independent expenditures without the permission of the campaign committee's treasurer, Wis. Stat. § 11.16(1)(a);
- Using preexisting funds for any purpose, § 11.05(6);
- Accepting corporate contributions for independent expenditures, § 11.38;
- Accepting individual contributions for independent expenditures above the base limits applicable to the candidate's committee, § 11.26(1); and
- Contributing to other candidates' committees where the candidate's committee has already contributed the base amount, § 11.26(2).

37. Second, in GAB's view, under Wisconsin Statutes § 11.06(4) expenditures coordinated with a political candidate or his campaign committee are deemed contributions to that committee. Under GAB's position, expenditures associated with engaging in issue advocacy would thereby be rendered "contributions" to the campaign. If the party producing the issue advocacy is a corporation, such "contributions" would be illegal *per se* under Wisconsin law. Such "contributions" would also be illegal if they exceed contribution limits (which are, for an individual, $1,000 for a state Senate candidate, $500 for a state assembly candidate, $250 for a local-office candidate, and up to $10,000 for candidates for other offices, Wis. Stat. § 11.26(1)) or if they are not properly reported.

38. GAB's vigorous advancement of this theory indicates that it intends to continue to regulate and restrict issue advocacy coordinated with a political candidate. It is therefore certain that GAB would deem CRG's proposed issue-advocacy campaign with Kim Simac, Carl Pettis, and Jason Arnold to violate Wisconsin law and subject CRG to campaign-committee status,

13

thereby forcing it to forgo all such issue advocacy or else face criminal investigation and sanctions.

<u>**Count I**</u>
**Violation of the First and Fourteenth Amendments and 42 U.S.C. § 1983:
Definition of "Political Purposes" Is Unconstitutionally Overbroad**

39. CRG repeats and re-alleges the allegations of Paragraphs 1–38.

40. The First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, protects CRG's right to engage in speech about policy issues, including its right to make expenditures in furtherance of such speech. The First Amendment also protects CRG's right to associate with likeminded persons and to petition government officials in furtherance of its advocacy mission.

41. "Laws that burden political speech are subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United v. FEC*, 558 U.S. 310, 340 (2010) (quotation marks omitted). When the Government restricts political speech, it therefore must demonstrate that the restrictions are narrowly tailored to further the permissible objective of preventing *quid pro quo* corruption. *Id*. at 359. *See also McCutcheon v. FEC*, 134 S. Ct. 1434, 1452 (2014).

42. The Supreme Court "has never recognized a compelling interest in regulating ads…that are neither express advocacy nor its functional equivalent." *WRTL*, 551 U.S. at 476. To the contrary, it has held that "[i]ssue ads…are by no means equivalent to contributions, and the *quid-pro-quo* corruption interest cannot justify regulating them." *Id.* at 478–79.

43. GAB has interpreted Wisconsin Statutes § 11.01(16) to reach issue advocacy coordinated with a political candidate and thereby impose restrictions on such issue advocacy.

14

Case 2:14-cv-01222-RTR   Filed 10/02/14   Page 14 of 19   Document 1

44. Moreover, GAB's interpretation results in restriction and prohibition of activities that are not made for a political purpose and raise no risk of *quid pro quo* corruption. Under Wisconsin Statutes § 11.10(4), an organization that engages in *any* coordination with a campaign is subjected to Chapter 11's campaign-committee regulations as to *all* its activities, even activities not coordinated with a political candidate or undertaken without any "political purposes."

45. Accordingly, the restrictions of Wisconsin law, as interpreted by GAB, on issue advocacy coordinated with a political candidate are not supported by any compelling interest and are therefore overbroad and facially unconstitutional.

### Count II
### Violation of the Fourteenth Amendment and 42 U.S.C. § 1983: Definition of "Political Purposes" Is Unconstitutionally Vague

46. CRG repeats and re-alleges the allegations of Paragraphs 1–38.

47. The Due Process Clause of the Fourteenth Amendment protects Plaintiffs' right not to be subject to vague government edicts.

48. The Seventh Circuit has already held that, to protect that right, "the statutory definition of 'political purposes' in section 11.01(16) and the regulatory definition of 'political committee' in GAB § 1.28(1)(a) are limited to express advocacy and its functional equivalent as those terms were explained in *Buckley* and *Wisconsin Right to Life II*." *Barland II*, 751 F.3d at 834.

49. That reasoning applies with equal or greater force to Chapter 11's treatment of coordinated expenditures. In GAB's view, such expenditures are made "for political purposes" when an organization subjectively intends to influence an election or its expenditures have the effect of so doing. CRG has no way to know when such subjective intent may be imputed to its

15

activities, or what political effect its speech may have, and therefore must forego protected speech and association to avoid criminal prosecution. *See WRTL*, 551 U.S. at 467.

50. Wisconsin Statutes § 11.01(16), as interpreted by GAB and applied through various provisions of Chapter 11, is therefore unconstitutionally vague and violates Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment.

### Count III
### Violation of the First and Fourteenth Amendments and 42 U.S.C. § 1983: Definition of "Political Purposes" Is Unconstitutional as Applied to CRG's Issue Advocacy

51. CRG repeats and re-alleges the allegations of Paragraphs 1–38.

52. The First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, protects CRG's right to engage in speech about policy issues, including its right to make expenditures in furtherance of such speech. The First Amendment also protects CRG's right to associate with likeminded persons and to petition government officials in furtherance of its advocacy mission.

53. "Laws that burden political speech are subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United*, 558 U.S. at 340 (quotation marks omitted). When the Government restricts political speech, it therefore must demonstrate that the restrictions are narrowly tailored to further the permissible objective of preventing *quid pro quo* corruption. *Id*. at 359. See also *McCutcheon v. FEC*, 134 S. Ct. 1434, 1452 (2014).

54. The Supreme Court "has never recognized a compelling interest in regulating ads…that are neither express advocacy nor its functional equivalent." *WRTL*, 551 U.S. at 476. To the contrary, it has held that "[i]ssue ads…are by no means equivalent to contributions, and the *quid-pro-quo* corruption interest cannot justify regulating them." *Id.* at 478–79.

16

55. The restriction of Wisconsin law, as interpreted by GAB, on issue advocacy coordinated with a political candidate is not supported by any compelling governmental interest and is not narrowly tailored to the government's interest in preventing *quid pro quo* corruption. It is therefore unconstitutional as applied to CRG's intended coordinated issue advocacy.

## Count IV
### Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201 and 2202

56. CRG repeats and re-alleges the allegations of Paragraphs 1-55.

57. An actual controversy exists between Defendants and CRG regarding the constitutionality of Wisconsin's regulation of issue advocacy coordinated with a political candidate.

58. CRG is entitled to a declaration of its rights under the First and Fourteenth Amendments and any further necessary or proper relief against Defendants pursuant to 28 U.S.C. §§ 2201 and 2202.

## Count V
### Preliminary and Permanent Injunctive Relief

59. CRG repeats and re-alleges the allegations of Paragraphs 1–58.

60. CRG's First and Fourteenth Amendment rights are well established under case law of the Supreme Court and courts of appeals. *See, e.g.*, *Barland II*, 751 F.3d at 833; *WRTL*, 551 U.S. at 476. Accordingly, CRG has a strong likelihood of success on the merits of this case.

61. CRG is suffering irreparable injury as a result of Defendants' enforcement and interpretation of Wisconsin's campaign-finance statute to restrict CRG from fully and freely exercising its core constitutional rights of political speech and association. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

17

Case 2:14-cv-01222-RTR   Filed 10/02/14   Page 17 of 19   Document 1

62. Defendants will suffer no injury at all if they are enjoined from enforcing GAB's unconstitutional interpretation of Wisconsin's campaign-finance statute.

63. An injunction would serve the public interest, as the public interest favors the exercise of First Amendment rights and is not harmed by the injunction of government action that is likely unconstitutional. *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589–90 (7th Cir. 2012).

## PRAYER FOR RELIEF

Wherefore, Plaintiff CRF respectfully requests that this Court enter judgment against the Defendants, including:

a) An order declaring that the definition of "political purposes" found in Wisconsin Statutes § 11.01(16) is facially unconstitutional and unconstitutionally vague, or adopting a limiting construction of that definition that excludes issue advocacy, whether or not coordinated with a political candidate;

b) An order declaring that the restrictions of Wisconsin Statutes §§ 11.05, 11.06, 11.10(4) 11.12, 11.14, 11.16, 11.23, 11.24, 11.26, 11.27, 11.30, 11.36, 11.38, 11.60, 11.61, and 11.66 are facially unconstitutional and unconstitutionally vague, or adopting a limiting construction of those provisions that excludes issue advocacy, whether or not coordinated with a political candidate;

c) An order declaring Wisconsin Statutes § 11.01(16), as applied through the restrictive provisions of Chapter 11, unconstitutional as applied to CRG's intended coordinated issue advocacy;

d) Preliminary and permanent injunctions enjoining Defendants, their agents, officers, employees, successors, and all persons acting in concert with each or any of them from implementing, enforcing, or giving any effect to the provisions of

18

Case 2:14-cv-01222-RTR   Filed 10/02/14   Page 18 of 19   Document 1

Chapter 11 as applied to issue advocacy, whether or not coordinated with a political candidate;

e) Costs and attorneys' fees pursuant to 42 U.S.C. § 1988 or any applicable statute or authority;

f) Such other relief as this Court determines is just and proper.

Dated: October 2, 2014

Respectfully submitted,

 /s/ David B. Rivkin
David B. Rivkin
Lee A. Casey
Mark W. DeLaquil
Andrew M. Grossman
Richard B. Raile
Baker & Hostetler LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, D.C. 20036
(202) 861-1731
drivkin@bakerlaw.com

*Attorneys for Plaintiff CRG*